*1*
*2*
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

*3*
*4*
UNITED STATES OF AMERICA,

*5*
Plaintiff

*6*
v.                                                    CRIMINAL 07-0041 (JAG)

*7*
*8*
ALEXIS LUNA ILARRAZA,

*9*
Defendant

*10*

*11*
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

*12*

*13*
I.  INTRODUCTION

*14*
      This matter is before the court on motion to suppress evidence filed by

*15*
*16*
defendant Alexis Luna Ilarraza on April 13, 2007.  (Docket No. 16.)  The United

*17*
States filed a motion in opposition on May 29,2007.  (Docket No. 22.)  Both

*18*
parties stated in their motions that a hearing would assist the court to rule on the

*19*
motion.  Accordingly, an evidentiary hearing was held on the motion to suppress

*20*
*21*
on June 1, 2007.  (Docket No. 24.)  The United States was represented by

*22*
Assistant United States Attorney G. Andrew Massucco, the defendant by Assistant

*23*
Federal Public Defender Héctor L. Ramos-Vega.  At said hearing, four witnesses

*24*
testified: Officer Ivette Berríos from the Tactical Operations Center in Carolina,

*25*
*26*
Puerto Rico; defendant Alexis Luna Ilarraza; Elizabeth Arzuaga Cos, common-law

*27*
wife of the defendant, and Special Agent Celinéz Núñez of the Bureau of Alcohol,

*28*
Tobacco and Firearms.

CRIMINAL 07-041 (JAG)                    2

## II.  PROCEDURAL BACKGROUND

On January 31, 2007, the defendant was indicted by a grand jury.  The indictment consists of three counts.  In Count One, the defendant is charged with knowingly and unlawfully possessing with intent to distribute a mixture or substance containing a detectable amount of marijuana (approximately ten (10) baggies weighing one (1) pound each), a Schedule 1, Controlled Substance, in violation of  21 U.S.C. § 841(a)(1) and § 841(b)(1)(A).  Count Two charges the defendant with knowingly and willfully possessing a firearm, as that term is defined by 18 U.S.C. § 921(a)(3), and ammunition to wit:  a loaded Smith and Wesson .40 caliber pistol, model SW40V with an obliterated serial number, in furtherance of the commission of a drug trafficking crime punishable under the Controlled Substances Act in violation of 21 U.S.C. § 841(a)(1), involving possession with intent to distribute a controlled substance as charged in Count One of the indictment, as defined in 18 U.S.C. § 924(c)(2), which may be prosecuted in a court of the United States.  All in violation of 18 U.S.C. § 924(c)(1)(A)(I).  Count Three similarly charges the defendant with knowingly and willfully possessing a firearm and ammunition, as those terms are defined in 18 U.S.C. § 921(a)(3) and § 921(a)(17)(A) respectively, that is, a loaded Smith and Wesson .40 caliber pistol, model SW40V with an obliterated serial number, which firearm had been shipped or transported in interstate or foreign commerce.  All in violation of 18 U.S.C. § 922(k).  (Docket No. 1.)

CRIMINAL 07-041 (JAG)                    3

III.  FACTUAL BACKGROUND

The following facts are based on the evidence presented at the hearing held on June 1, 2007.

Police Officer Ivette Berríos Torres (hereinafter "Officer Berríos"), an agent of the Carolina Tactical Operations Unit for the past 11 years, testified as to the arrest of the defendant on January 30, 2007 at 7:00 p.m.   Officer Berríos, accompanied by two officers, all in uniform in an official vehicle, received instructions to drive to Road 860 searching for a green Honda Accord with license plate FJY-376.  Officer Berríos' sergeant had received confidential information indicating that this vehicle was in a Carolina housing project and it contained contraband and a secret compartment where a pistol and money were hidden. The officers went near the Carolina housing project and were able to spot the vehicle parked inside the project.  Officer Berríos testified that they waited until the moment when the vehicle took off and proceeded to follow it as it drove off very fast in front of the official vehicle.

Officer Berríos noted that one of the numbers in the license plate did not match the license plate provided by the confidential informant.  Instead of the license plate reading FJY-376 (license plate number informed confidentially), the license plate read FJY-876.  Officer Berríos testified that the vehicle was being driven very fast and changing lanes.  At Road 887, along with her fellow officers,

CRIMINAL 07-041 (JAG)                    4

Officer Berríos detained the green Honda Accord.  The license plate corresponded to an unregistered vehicle.

The officers proceeded to make a traffic stop.  When Officer Berríos approached the driver, she  noticed a dark tint on the vehicle's windows.  As the driver lowered the window, Officer Berríos noticed a strong odor of raw marijuana, a smell the officer was familiar with based upon her experience and training.  Once the driver got out, and went to the back, Officer Berríos noticed the marijuana odor was stronger from the trunk part of the vehicle.  According to Officer Berríos, she noticed duct tape on the license plate altering the number 3 in license plate FJY-376 to an 8.  (See Exhibit 5.)

As in any routine stop, the officer asked the defendant for the vehicle's registration and his driver's license.  The events that occurred from this point on are in controversy, including the duct tape on the 3.  While Officer Berríos testified that the defendant indicated that he did not have either, the defendant testified that he did provide the officer with a valid vehicle registration and driver's license at the time of the road stop.

Officer Berríos then proceeded to ask the defendant to accompany the officers to the police headquarters so that an officer from the Stolen Vehicle Unit could inspect the vehicle.  Officer Berríos also said that she was concerned about the safety of the officers.  Officer Berríos suspected that the defendant was

CRIMINAL 07-041 (JAG)                    5

transporting drugs in his vehicle due to the strong marijuana odor coupled with the fact of the fast driving and the registration of the vehicle.  Officer Berríos also testified that she felt that the vehicle might have been stolen and that the defendant could be armed.  According to Officer Berríos, the defendant was merely asked to accompany the officer to the headquarters which was two to three minutes away.  On the other hand, the defendant testified that he was ordered to follow the officers to police headquarters and was escorted with a police vehicle in front of his vehicle while another police vehicle followed the defendant's vehicle.  The defendant testified that the officers ordered him to drive his vehicle to the police headquarters in order to measure the window tints.

Subsequently, at the police headquarters, Officer Berríos called the Stolen Vehicle Unit but nobody answered.  Officer Berríos proceeded to fill out a PPR28 (Exhibit 16), which is an inventory form for stolen vehicles.  Officer Berríos testified that at this time she asked the defendant for his driver's license and vehicle registration, and these documents were provided by him.  Even though the defendant asserted that the vehicle belonged to him, since the vehicle was registered to a woman's name, Officer Berríos proceeded with the stolen vehicle procedure.  Officer Berríos testified that she gave the defendant tickets for two violations of Puerto Rico Traffic Law No. 22, of January 7, 2000, one for illegal change of lanes, and another for violation of the permitted tint exposure. (See

CRIMINAL 07-041 (JAG)                6

Exhibit 13.)  The defendant denied that he was given these tickets on January 30,

2007 for illegal change of lanes and having illegally tinted windows.  He asserted

that to the contrary, the tickets were later given to his attorney in this court.

Officer Berríos decided to commence an inventory search without waiting

for the Stolen Vehicle Unit agents, since they would be late.  On the form, the

agent marked in a box:   [x], "involved in the commission of a crime," (Exhibit

16), that is, referring to the tape on the license plate which changed a number

from 3 to 8.  Officer Berríos testified that the duct tape altering the license plate,

lead her to conclude that the vehicle did not belong to him.  On the other hand,

the defendant stated that he never put a black piece of tape on the license plate,

stating that FJY-376 is his license plate.  The defendant said  in his testimony that

he had no reason to place a tape on the plate because the vehicle complied with

the law.

Officer Berríos testified that the driver opened the trunk with a key.  Inside

the trunk there was a big bag which contained 10 pounds of marijuana.  (See

Exhibit 1.)  Once the marijuana was discovered, officer Berríos Mirandized the

defendant and placed him under arrest.  The search continued while the defendant

remained handcuffed.  During the arguably inventory search, the defendant

stated, when asked if there was anything else incriminating, and he said, "keep

looking, if you find anything, fine."

CRIMINAL 07-041 (JAG)                    7

Shortly after, Elizabeth Arzuaga (hereinafter "Ms. Arzuaga") arrived stating that she was the owner of the vehicle.  She said that she was the wife of the defendant.  Officer Berríos testified that even after Ms. Arzuaga arrived and stated she was the owner of the vehicle, she continued the search.  Ms. Arzuaga testified that she waited at the police headquarters for two hours before she had direct contact with Officer Berríos even after she had made clear that she was the owner of the vehicle.

Officer Berríos testified about how she shined a flashlight through the air conditioning duct, and saw money and a pistol behind the dashboard. She told Ms. Arzuaga to sit on the driver's seat, and asked her if she could see the pistol through the air conditioning ducts.  Ms Arzuaga said "I don't know", but she said she saw something metal.  Officer Berríos told Ms. Arzuaga, who was scared and had asked if she was going to be arrested, that if she did not give authorization, she could go to the prosecutor and get a search warrant to break the dash.  This was when Ms. Arzuaga acceded to sign a form consenting to the search.  (See Exhibit 17.)  According to Officer Berríos' testimony, the money and the gun were taken from the inside of the vehicle's dashboard (Exhibit 15) after Ms. Arzuaga signed the consent form.  The defendant testified that by the time his wife signed the consent form, the dashboard had already been destroyed and the contents had been seized.  Officer Berríos was later told by the defendant that he used a

CRIMINAL 07-041 (JAG)                    8

magnet to open the dashboard but had thrown it out on the way to the police station.

Special Agent Celinez Núñez, of the Bureau of Alcohol, Tobacco and Firearms for the past 8 years, later arrived at the police headquarters.  She testified about the strong odor of the marijuana that had been seized, stating that two rooms away from the marijuana, the smell of raw, leafy marijuana could be made out.  Special Agent Celinez Núñez said that it seemed that since 10 pounds of marijuana had been found in the trunk, the search had continued.  Also, she testified, referring to Exhibit 2, that it reflected the condition of the dashboard when she arrived.  There was no plastic shield in front of the dials of the dashboard.

IV.  ANALYSIS

A.  Standing

In its opposition to the motion to suppress (Docket No. 22.), the government raises the issue of lack of standing on the part of the defendant to challenge the seizure of the weapons and narcotics since it understands that he did not have a reasonable expectation of privacy in the Honda Accord.

"More than a decade ago the Supreme Court laid to rest the persistent notion that fourth amendment 'standing' and 'reasonable expectation of privacy' are interchangeable concepts." United States v. Bouffard, 917 F.2d 673, 675 (1st

CRIMINAL 07-041 (JAG)                    9

Cir. 1990) (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980); Rakas v. Illinois, 439 U.S. 128, 140-48 (1978)).  Even though the legal field is reluctant to change this concept, "standing" can no longer connote "a legitimate expectation of privacy in the evidence seized or the premises searched."  United States v. Bouffard, 917 F.2d at 675.  Rakas and Rawlings have expanded that notion to say that "it is incumbent upon the defendant to establish not only unlawful police conduct, but that the unlawful conduct intruded upon some legitimate expectation of privacy on the part of the defendant who challenges it."  Id.  "Such an expectation of privacy is a threshold standing requirement that a defendant must establish before the court can proceed with any Fourth Amendment analysis."  United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir. 1994) (citing United States v. Cruz Jiménez, 894 F.2d 1, 5 (1st Cir. 1990)).  Nonetheless, the reformulation of standing does not change the traditional test.  The person must possess "(1) a subjective expectation of privacy in the area searched," United States v. Bouffard, 917 F.2d at 677 (citing United States v. Cruz Jiménez, 894 F.2d at 5); "(2) which society is prepared to recognize as reasonable."  United States v. Bouffard, 917 F.2d at 677 (citing California v. Greenwood, 486 U.S. 35, 39 (1988)).

        The Fourth Amendment recognizes "[t]he right of people to be secured in their persons, houses, papers, and effects, against unreasonable searches and

CRIMINAL 07-041 (JAG)                    10

seizures. . . ." U.S. Const. amend. IV.  Here, the defendant pays the monthly bill of the vehicle, is the sole driver of the vehicle, and the person that operates the vehicle on a daily basis.  The only reason why the vehicle is registered to Ms. Arzuaga is that the defendant has poor financial credit.  If anyone had standing to attack the search, it was clearly not Ms. Arzuaga.  The officers searched an automobile in which defendant has an expectation of privacy which society is prepared to recognize as reasonable.  After reviewing the evidence in the record, I find that the defendant, being the *de facto* owner of the vehicle,  has standing to assert a Fourth Amendment claim.  Therefore, the defendant has standing to seek suppression of the evidence seized.

B.  The Automobile Exception to a Warrantless Search

The Fourth  Amendment's prohibition against unreasonable searches and seizures forbids most warrantless searches.    A warrantless search is presumptively unreasonable under the Fourth Amendment.  See California v. Acevedo, 500 U.S. 565, 593 (1991); see also United States v. López, 380 F.3d 538, 543 (1st Cir. 2004), cert. denied, 543 U.S. 1074 (2005), reh'g denied, 543 U.S. 1179 (2005). One of the most common of the well delineated exceptions to the warrantless search doctrine is the automobile exception.  Under this exception to the warrant requirement, "the necessary predicate for law enforcement officers' warrantless search of a motor vehicle is that they have probable cause to believe

CRIMINAL 07-041 (JAG)                    11

that the car contains contraband or other evidence of criminal activity." United States v. Panitz, 907 F.2d 1267, 1271 (1st Cir. 1990).

Probable cause to conduct a vehicle search "exists where the facts and circumstances known to the arresting officers are sufficient to cause a person of reasonable caution to believe the search is justified. That is, there must have been particular facts indicating that, at the time of the search, the vehicle or a container within it carried contraband, evidence of a crime, or other seizable matter." United States v. Martínez-Molina, 64 F.3d 719, 730 (1st Cir. 1995) (citing United States v. Infante-Ruiz, 13 F.3d 498, 502 (1st Cir. 1994) (citing 3 Charles Alan Wright, Federal Practice and Procedure § 662, at 579 (1982)).  The Supreme Court has held the general principle that the requirement of probable cause is satisfied by a qualified individual's perception of a distinctive odor associated with a forbidden substance.  See Johnson v. United States, 333 U.S. 10, 13 (1948). In this case, the defendant does not contest the officer's assertion of the illegal change of lanes, nor does he contest the smell of raw marijuana emanating from the driver's window or the trunk of the automobile.  The strong odor of raw marijuana, emanating from the defendant's automobile, perceived after a valid traffic stop, provided the  probable cause to search.

In Chambers v. Maroney, 399 U.S. 42, 47-52 (1970), the Supreme Court approved the warrantless seizure and subsequent search of a vehicle at a police

CRIMINAL 07-041 (JAG)                    12

station because there was probable cause at the time of the stop to justify an immediate search.  Having probable cause to search the automobile at the site of the traffic stop, Officer Berríos was justified to make a later search at the police station.  See California v. Acevedo, 500 U.S. at 570 ("the police could search later whenever they could have searched earlier [based on probable cause], had they so chosen") (citing Chambers v. Maroney, 399 U.S. at 51-52); see also Michigan v. Thomas, 458 U.S. 259, 261 (1982).  "[T]he relocation of a vehicle prior to the search does not affect the probable cause analysis." United States v. Le, 377 F. Supp. 2d 245, 253 (D. Me. 2005), aff'd by United States v. Cao, 471 F.3d 1 (1st Cir. 2006) (citing California v. Acevedo, 500 U.S. at [569-70] (citing Chambers v. Maroney, 399 U.S. at 51-52).  Officer Berríos was justified to search the defendant's automobile at the police station since she had probable cause to do so at the site of the traffic stop but was concerned for the officers' safety.

Defendant Luna submits in his motion to suppress (Docket No. 16) that the Tactical Operations Department agents exceeded the scope of what an inventory search is when they decided to destroy the vehicle's dash looking for a hidden compartment.  Defendant fails to take into consideration that the destruction of the vehicle's dash was made after 10 pounds of marijuana had been discovered in the trunk of the vehicle and immediately after the defendant had been arrested. The scope of a warrantless search conducted under the automobile exception

CRIMINAL 07-041 (JAG)                    13

extends as far as "a magistrate could legitimately authorize by warrant." United States v. Ross, 456 U.S. 798, 825 (1982).

"Once probable cause is found to exist, there is no need to weigh the evidence of probable cause against the privacy interests of the individual whose property was subject to search.  Neither is it necessary to apply heightened scrutiny to contraband discovered 'in a container in a locked, hidden compartment' of the automobile." United States v. Le, 377 F. Supp. 2d at 252 (citing and quoting United States v. López, 380 F.3d at 544).  The automobile exception allows "a 'probing search' of compartments and containers within the automobile so long as the search is supported by probable cause." California v. Acevedo, 500 U.S. at 570 (citing United States v. Ross, 456 U.S. at 800).

The entire seizure and subsequent search of the vehicle having been  based on probable cause that the vehicle contained contraband, the entire search was legal as within the ordinary scope of the automobile exception.  That the defendant was crafty in secreting a tool of the trade behind a magnet-operated dashboard does not remove the discovered space from the realm of hidden compartments.

### C.  Search Incident to an Arrest

A search incident to an arrest has been recognized by the courts as a well settled exception to the search warrant requirement of the Fourth Amendment. United States v. Robinson, 414 U.S. 218, 224 (1973).  The Supreme Court has

CRIMINAL 07-041 (JAG)                14

held "that a search 'can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest.'" Shipley v. California, 395 U.S. 818, 819-20 (1969) (quoting Stoner v. California, 376 U.S. 483, 486 (1964)).  In relation to warrantless automobile searches, the Supreme Court, referring to the standard set forth in Chimel v. California, 395 U.S. 752, 762-63 (1969), established in New York v. Belton, 453 U.S. 454, 460 (1981), that the scope of a search incident to arrest extended to the interior of the passenger compartment of an automobile when the arrestee was an occupant of such vehicle.  Furthermore, the Supreme Court has held that "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." Thornton v. United States, 541 U.S. 615, 623 (2004).

In this case, Officer Berríos had probable cause to search the entire vehicle due to the uncontested scent of raw marijuana emanating from the passenger area and the trunk of the defendant's vehicle at the time of the traffic stop.  The defendant was arrested immediately after the officers found the 10 pounds of marijuana in the trunk of the defendant's vehicle.  From this arrest on, the search is now not only supported the automobile exception when there is probable cause to search, but also by the exception to the search warrant requirement provided

CRIMINAL 07-041 (JAG)                    15

by the broad generalized scope of a search incident to an arrest to preserve evidence.  New York v. Belton, 453 U.S. at 461.

### D.  Consent

"[O]ne of the specifically established exceptions to the [Fourth Amendment] requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."  United States v. Meléndez, 301 F.3d 27, 32 (1st Cir. 2002) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)).  Since it has been previously discussed that the seizure and subsequent search of the defendant's vehicle was legal as within the scope of the automobile exception, the analysis of the validity of the consent form signed in this case is moot; as I said in the evidentiary hearing, it is rendered a non-issue.  However, since the defense makes much ado of the issue of consent in his energetic, piquant post-hearing memorandum, and because I veritably muzzled defense counsel's valiant efforts to press the vitiated consent of Ms. Arzuaga, I will address the same.

A warrantless search is not unreasonable "where voluntary consent has been obtained, either from the individual whose property is searched, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), or from a third party who possesses common authority over the premises."  United States v. Torres, 188 F. Supp. 2d 155, 157-58 (D.P.R. 2002) (quoting Illinois v. Rodríguez, 497 U.S. 177, 181 (1990)).  When consent is given

CRIMINAL 07-041 (JAG)              16

by one "who possesses common authority over the premises or effects," this consent will be deemed valid "against the absent, non-consenting person with whom that authority is shared." United States v. Marshall, 348 F.3d 281, 284 (1st Cir. 2003) (quoting United States v. Matlock, 415 U.S.164, 170 (1974)); cf. Georgia v. Randolph, 547 U.S. 103, 108-11 (2006).  In the case at hand, Ms. Arzuaga did not pay for the vehicle or use it at all.  She did not have the common authority over the defendant's vehicle required by United States v. Torres and Illinois v. Rodríguez to have standing to consent to a search.  See Georgia v. Randolph, 547 U.S. at 110.

Furthermore, in order for consent to be valid it must be given voluntarily. United States v. Weidul, 325 F.3d 50, 53 (1st Cir. 2003).  In examining the voluntariness of the consent, the courts look at the totality of the circumstances. United States v. Luciano, 329 F.3d 1, 7 (1st Cir. 2003); United States v. Coraine, 198 F.3d 306, 309 (1st Cir. 1999); United States v. Barnett, 989 F.2d 546, 554-55 (1st Cir. 1993).  When looking at the totality of circumstances the court pays close attention to individualized factors bearing on the vulnerability of the consenting party which "are age, education, experience, intelligence, and knowledge of the right to withhold consent." United States v. Barnett, 989 F.2d at 555.

It is uncontroverted that Ms. Arzuaga was very nervous at the time she signed the consent form.  One of the factors taken into consideration by courts in

CRIMINAL 07-041 (JAG)                    17

assessing voluntariness is coercive police behavior.  The defendant's testimony, as well as    Ms. Arzuaga's indicate that she was not only nervous and uncomfortable with the police's presence, but that she was also threatened with an unreasonable arrest.  She thought that by signing the consent form she would get the stressful situation over with; she was right.  A consent form signed under the totality of these circumstances should not be understood to be the product of a voluntary consent.

Finally, in the suppression hearing, there were contradicting versions about when the consent form had been signed.  When using a consent form to obtain consent to search, the form must be signed before the search is conducted; otherwise the consent is invalid.  See United States v. Tibbs, 49 F. Supp. 2d 47, 53-54 (D. Mass. 1999).  The defendant testified that when Ms. Arzuaga signed the consent form, the police officers had already found the secret spot hidden behind the dash of the automobile.  I credit the defendant's version.  Therefore, it is my conclusion that Ms. Arzuaga's consent was not valid for three reasons:  first, she did not have the authority to consent to such a search; second, it was given involuntarily; and third, consent was acquired after the search had been performed.

However, even if I would not credit the defendant's testimony, as I do, the totality of the circumstances forces me to conclude that, for the reasons

CRIMINAL 07-041 (JAG)                    18

previously stated, the seizure and subsequent search of the defendant's vehicle was lawful.  Consent is unnecessary to validate a seizure and subsequent search that is itself legal as within the ordinary scope of the automobile exception and the search incident to an arrest exception.  In any event, after being read the Miranda warnings, the defendant, upon questioning, clearly stated "Keep looking. If you find anything, fine."  Whether ironic or sardonic, the statement was an invitation, post-Miranda, to continue the search, a search obviously geared to find evidence.  See Georgia v. Randolph, 547 U.S. at 125 (Breyer, J., concurring).

### III.  CONCLUSION

Defendant Luna, being the *de facto* owner of the vehicle that was seized and searched, has "a subjective expectation of privacy in the area searched, which society is prepared to recognize as reasonable. . . ." United States v. Bouffard, 917 F.2d at 677 (citations omitted). Thus, the defendant has standing to present a motion to suppress the evidence seized from his vehicle.

Even though there are a number of allegations that remain in controversy, the fact of the scent of raw marijuana emanating from the trunk of the vehicle is uncontested.  This fact provided Officer Berríos with probable cause to believe the vehicle contained contraband.  See Johnson v. United States, 333 U.S. at 13, and United States v. Martínez-Molina, 64 F.3d at 730.  A warrantless seizure and subsequent search of a vehicle at a police station is legal when at the time of the

CRIMINAL 07-041 (JAG)                    19

road stop there was probable cause to justify an immediate search.   See Chambers v. Maroney, 399 U.S. at 47-52; see also Michigan v. Thomas, 458 U.S. at 261; United States v. Le, 377 F. Supp. 2d at 253.  The automobile exception allows "a 'probing search' of compartments and containers within the automobile so long as the search is supported by probable cause." California v. Acevedo, 500 U.S. at 570.  Once the marijuana was found in the trunk of the vehicle and the defendant was arrested, the continuance of the search was also valid as within the scope of the search incident to an arrest exception.  See New York v. Belton, 453 U.S. at 460; see also Thornton v. United States, 541 U.S. at 623.  Finally, as the registered owner of the vehicle, Ms. Arzuaga might have standing to sue and be sued civilly in a tort action.  However, in real terms, she had no standing to put a halt to the  search since the vehicle and its contents belonged to the defendant. Regardless of the errant police action in acquiring a defective consent *post haec*, her consent *vel non* is yet a non-issue.

Thus, I recommend that the motion to suppress be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the

CRIMINAL 07-041 (JAG)                    20

basis for such objections.    Failure to comply with this rule precludes further appellate review.    See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 13th day of July, 2007.


S/ JUSTO ARENAS
Chief United States Magistrate Judge