IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff(s)**

        **v.**

ALEXIS LUNA-ILARRAZA,

    **Defendant(s)**

**CIVIL NO.** 07-41(JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

On January 31, 2007, Alexis Luna-Ilarraza ("defendant") was indicted by a grand jury on three counts. Count One charges the defendant with knowingly and unlawfully possessing with intent to distribute a mixture or substance containing a detectable amount of marijuana (approximately ten (10) baggies weighing one (1) pound each), a Schedule 1, Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A). Count Two charges the defendant with knowingly and willfully possessing a firearm, as that term is defined by 18 U.S.C. § 921(a)(3), and ammunition to wit: a loaded Smith and Wesson .40 caliber pistol, model SW40V with an obliterated serial number, in furtherance of the commission of a drug trafficking crime punishable under the Controlled Substances Act in violation of 21 U.S.C. § 841(a)(1), involving possession with intent to distribute a controlled substance as charged in Count One of the

indictment, as defined in 18 U.S.C. § 924(c)(2), which may be prosecuted in a court of the United States; all in violation of 18 U.S.C. § 924(c)(1)(A)(I). Count Three charges the defendant with knowingly and willfully possessing a firearm and ammunition, as those terms are defined in 18 U.S.C. § 921(a)(3) and § 921(a)(17)(A) respectively, that is, a loaded Smith and Wesson .40 caliber pistol, model SW40V with an obliterated serial number, which firearm had been shipped or transported in interstate or foreign commerce. All in violation of 18 U.S.C. § 922(k). (Docket No. 1.)

Pending before the Court is a Motion to Suppress filed by the defendant claiming that the ten (10) pounds of marijuana found in the trunk of his car and a firearm that was found in a hidden compartment in the gauge cluster/air conditioning vents of his vehicle were obtained in violation of the Fourth Amendment of the Constitution of the United States and should therefore be suppressed. (Docket No. 16).  The Motion to Suppress was referred by the Court to Chief Magistrate Judge Justo Arenas for hearing and Report and Recommendation. (Docket Nos. 18, 19).

Upon de novo review of the Magistrate Judge's Report and Recommendation (Docket No. 31), defendant's objections thereto (Docket No. 38) and the Government's response (Docket No. 39), the Court finds no reason to depart from the Magistrate Judge's recommendations and accordingly **DENIES** the Motion to Suppress.

Criminal No.  07-41 (JAG)                                          3

### FACTUAL BACKGROUND[1]

At the suppression hearing, Police Officer Ivette Berrios Torres ("Officer Berrios"), an agent of the Carolina Tactical Operations Unit for the past 11 years, testified as to the arrest of the defendant on January 30, 2007 at 7:00 p.m. Officer Berrios, accompanied by two officers, all in uniform in an official vehicle, received instructions to drive to Road 860 searching for a green Honda Accord with license plate FJY-376. Officer Berrios' sergeant had received confidential information indicating that this vehicle was in a Carolina housing project and it contained contraband and a secret compartment where a pistol and money were hidden.  The officers went near the Carolina housing project and were able to spot the vehicle parked inside the project. Officer Berrios testified that they waited until the moment when the vehicle took off and proceeded to follow it as it drove off very fast in front of the official vehicle.  Officer Berrios noted that one of the numbers in the license plate did not match the license plate provided by the confidential informant. Instead of the license plate reading FJY-376 (license plate number informed confidentially), the license plate read FJY-876. Officer Berrios testified that the vehicle was being driven very fast and changing lanes illegally. At Road 887, along with her fellow officers, Officer Berrios detained the green Honda

---

[1] The facts of this case are culled from the Magistrate Judge's Report and Recommendation.

Criminal No.   07-41 (JAG)                                           4

Accord. The license plate corresponded to an unregistered vehicle.
The officers proceeded to make a traffic stop. When Officer Berrios
approached the driver, she noticed a dark tint on the vehicle's
windows. As the driver lowered the window, Officer Berrios noticed
a strong odor of raw marijuana, a smell the officer was familiar
with based upon her experience and training.

     Once the driver got out and went to the back, Officer Berrios
noticed the marijuana odor was stronger from the trunk part of the
vehicle. According to Officer Berrios, she noticed duct tape on the
license plate altering the number 3 in license plate FJY-376 to an
8. (See Exhibit 5.)  As in any routine stop, the officer asked the
defendant for the vehicle's registration and his driver's license.
The events that occurred from this point on are in controversy,
including the duct tape on the 3. While Officer Berrios testified
that the defendant indicated that he did not have either, the
defendant testified that he did provide the officer with a valid
vehicle registration and driver's license at the time of the road
stop. Officer Berrios then proceeded to ask the defendant to
accompany the officers to the police headquarters so that an officer
from the Stolen Vehicle Unit could inspect the vehicle. Officer
Berrios also said that she was concerned about the safety of the
officers. Officer Berrios suspected that the defendant was
transporting drugs in his vehicle due to the strong marijuana odor
coupled with the fact of the fast driving and the registration of

the vehicle. Officer Berrios also testified that she felt that the vehicle might have been stolen and that the defendant could be armed. According to Officer Berrios, the defendant was merely asked to accompany the officer to the headquarters which was two to three minutes away. On the other hand, the defendant testified that he was ordered to follow the officers to police headquarters and was escorted with a police vehicle in front of his vehicle while another police vehicle followed the defendant's vehicle. The defendant testified that the officers ordered him to drive his vehicle to the police headquarters in order to measure the window tints.

Subsequently, at the police headquarters, Officer Berrios called the Stolen Vehicle Unit but nobody answered. Officer Berrios proceeded to fill out a PPR28 (Exhibit 16), which is an inventory form for stolen vehicles. Officer Berrios testified that at this time she asked the defendant for his driver's license and vehicle registration, and these documents were provided by him. Even though the defendant asserted that the vehicle belonged to him, since the vehicle was registered to a woman's name, Officer Berrios proceeded with the stolen vehicle procedure. Officer Berrios testified that she gave the defendant tickets for two violations of Puerto Rico Traffic Law No. 22, of January 7, 2000, one for illegal change of lanes, and another for violation of the permitted tint exposure. (See Exhibit 13.) The defendant denied that he was given these tickets on January 30, 2007.  He asserted that the tickets were

given to him by his attorney later, when in court.  Officer Berrios
decided to commence an inventory search without waiting for the
Stolen Vehicle Unit agents, since they would be late. On the form,
the agent marked in a box: [x], "involved in the commission of a
crime," (Exhibit 16), that is, referring to the tape on the license
plate which changed a number from 3 to 8. Officer Berrios testified
that the duct tape altering the license plate, lead her to conclude
that the vehicle did not belong to him. On the other hand, the
defendant stated that he never put a black piece of tape on the
license plate, stating that FJY-376 is his license plate. The
defendant said in his testimony that he had no reason to place a
tape on the plate because the vehicle complied with the law.
Officer Berrios testified that the driver opened the trunk with a
key. Inside the trunk there was a big bag which contained 10 pounds
of marijuana. (See Exhibit 1.) Once the marijuana was discovered,
Officer Berrios Mirandized the defendant and placed him under
arrest. The search continued while the defendant remained
handcuffed. During the arguably inventory search, the defendant
stated, when asked if there was anything else incriminating, and he
said, "keep looking, if you find anything, fine."

    Shortly after, Elizabeth Arzuaga ("Ms. Arzuaga") arrived
stating that she was the owner of the vehicle. She said that she was
the wife of the defendant. Officer Berrios testified that even after
Ms. Arzuaga arrived and stated she was the owner of the vehicle, she

Criminal No.  07-41 (JAG)                                      7

continued the search. Ms. Arzuaga testified that she waited at the
police headquarters for two hours before she had direct contact with
Officer Berrios even after she had made clear that she was the owner
of the vehicle.  Officer Berrios testified about how she shined a
flashlight through the air conditioning duct, and saw money and a
pistol behind the dashboard. She told Ms. Arzuaga to sit on the
driver's seat, and asked her if she could see the pistol through the
air conditioning ducts. Ms Arzuaga said "I don't know", but she said
she saw something metal. Officer Berrios told Ms. Arzuaga, who was
scared and had asked if she was going to be arrested, that if she
did not give authorization, she could go to the prosecutor and get
a search warrant to break the dash. This was when Ms. Arzuaga
acceded to sign a form consenting to the search. (See Exhibit 17.)
According to Officer Berrios' testimony, the money and the gun were
taken from the inside of the vehicle's dashboard (Exhibit 15) after
Ms. Arzuaga signed the consent form. The defendant testified that by
the time his wife signed the consent form, the dashboard had already
been destroyed and the contents had been seized. Officer Berrios was
later told by the defendant that he used a magnet to open the
dashboard but had thrown it out on the way to the police station.

     Special Agent Celinez Nunez, of the Bureau of Alcohol, Tobacco
and Firearms for the past 8 years, later arrived at the police
headquarters. She testified about the strong odor of the marijuana
that had been seized, stating that two rooms away from the

Criminal No.  07-41 (JAG)                                            8

marijuana, the smell of raw, leafy marijuana could be made out. Special Agent Celinez Nunez said that it seemed that since 10 pounds of marijuana had been found in the trunk, the search had continued. Also, she testified, referring to Exhibit 2, that it reflected the condition of the dashboard when she arrived. There was no plastic shield in front of the dials of the dashboard.

## DISCUSSION

I. Standard of Review

A district court may, on its own motion, refer a pending matter to a United States Magistrate Judge for a report and recommendation. See 28 U.S.C. §636(b)(1)(B); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico.  Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order.  28 U.S.C. § 636(b)(1).  Since timely objections to the report and recommendation have been filed, the Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. See United States v. Raddatz, 447 U.S. 667, 673 (1980); Lopez v. Chater, 8 F. Supp.2d 152, 154 (D.P.R. 1998).

II. Defendant's Objections to Report and Recommendation

In his Objection to the Magistrate Judge's Report and Recommendation, the defendant objects to the Magistrate Judge's

determination that the search of his vehicle was justified under the
automobile exception to the warrant requirement or as a search
incident to the arrest.  Furthermore, defendant argues that even if
the original detention and subsequent search that revealed the
marijuana in his trunk was to be found valid, the destructive search
of the vehicle that revealed the firearm is invalid because it
cannot be justified under either the automobile exception or as a
search incident to a valid arrest.

     Defendant first argues that the search of his vehicle was not
justified under the automobile exception to the warrant requirement,
stating that the Magistrate Judge based his conclusion that there
was probable cause for the search on Mr. Luna's alleged failure to
contest Officer Berrios' assertions that he illegally changed lanes
and that the smell of marijuana was emanating from his vehicle.
Defendant asserts that he contested the validity of the traffic stop
in his motion to suppress and at the hearing as a subterfuge to
intervene with him.  As to the illegal change of lanes, defendant
argues that he could not have disputed it because he was never
informed that this was one of the reasons for the stop.   He
allegedly learned about this reason for the stop at his arraignment,
when his attorney gave him the traffic tickets issued to him.
Furthermore, defendant states that the only reason given to him for
the stop was the use of illegal tinted glass and that Puerto Rico
traffic law does not allow a police officer to give a ticket or

Criminal No.  07-41 (JAG)                                    10

detain a person only on suspicion that the tinted windows on his car
are illegal.

At the outset, the defendant was the subject of a valid traffic
stop.    Defendant's objection with respect to this initial
intervention is that he was informed by Officer Berrios that he was
pulled over because she believed that the vehicle's windows were
tinted in violation of the law, but was never told that he was also
stopped because he illegally changed lanes.  However, defendant was
issued a traffic ticket for the latter infraction.  Regardless of
when he actually received the ticket for illegal change of lanes, he
did not contest it. (See Docket No. 35, Transcript of Suppression
Hearing, page 122).  Having probable cause to believe that the
defendant committed a traffic violation, the officers lawfully
stopped him.  Moreover, defendant's allegation that the traffic stop
was a subterfuge to intervene with him does not invalidate the stop
when it is otherwise founded on probable cause.  "Subjective
intentions play no role in ordinary, probable-cause Fourth Amendment
analysis." Whren v. U.S., 517 U.S. 806, 813 (1996).

Once validly stopped, the intervening officers learned that the
license plate number on the defendant's vehicle did not appear
registered and after approaching the car, noticed that said number
had been altered with black tape.  Further, the agent sensed the
smell of marijuana coming from the defendant's car.    These

circumstances gave the officers probable cause to think that the defendant was transporting marijuana in a stolen car.

The defendant argues that there was no odor of marijuana coming from his car and points to the transcript of the suppression hearing to challenge the Magistrate Judge's conclusion that he never contested Officer Berrios' assertion that the smell of marijuana was emanating from his vehicle.  The Court has reviewed the transcript and confirms that defendant denied that a strong smell of marijuana was emanating from the bags in which it was contained.  Indeed, when asked at the suppression hearing whether a "strong odor" of marijuana was emanating from his car, the defendant answered no. (See Docket No. 35, Transcript of Suppression Hearing, page 120). The government does not address this issue in its response. However, the Court understands that this is a credibility issue. The government presented two witnesses at the suppression hearing - both qualified to testify about the odor of marijuana- that confirmed that the marijuana that was seized from defendant's car had a strong odor.  Ultimately, their versions were awarded more credibility than defendant's.[2]

_____

[2]  The Court will not tamper with the credibility determinations made by the Magistrate Judge. See United States v. Raddatz, 447 U.S. 667, 681 n. 7 (noting that when the issue involves credibility, it is unlikely that a district judge would reject the magistrate's views and substitute his own appraisal); United States v. Hernandez-Rodriguez, 443 F.3d 138, 148 (1st Cir. 2006)(holding that a district court may not reject a magistrate judge's findings as to the credibility of a witness without hearing the witness testify first hand); National Railroad Passenger Corp.

Criminal No.  07-41 (JAG)                                    12

     One of the most common exceptions to the warrantless search
doctrine (a warantless search is presumptively unreasonable under
the Fourth Amendment)[3] is the automobile exception.  Under this
exception, "the necessary predicate for law enforcement officers'
warrantless search of a motor vehicle is that they have probable
cause to believe that the car contains contraband or other evidence
of criminal activity." United States v. Panitz, 907 F.2d 1267, 1271
(1st Cir. 1990).  Probable cause to conduct a vehicle search "exists
where the facts and circumstances known to the arresting officers
are sufficient to cause a person of reasonable caution to believe
the search is justified.  That is, there must have been particular
facts indicating that, at the time of the search, the vehicle or a
container within it carried contraband, evidence of a crime, or
other seizable matter." United States v. Martínez-Molina, 64 F.3d
719, 730 (1st Cir. 1995) (citing United States v. Infante-Ruiz, 13
F.3d 498, 502 (1st Cir. 1994) (citing 3 Charles Alan Wright, Federal
Practice and Procedure § 662, at 579 (1982)).  In determining
"whether the government has made a sufficient showing of probable
cause, a reviewing court must examine the 'totality of the

_____

v. Koch Industries Inc., 701 F.2d 108, 111 (10th Cir. 1983)(holding
that "only in a rare case should a district judge resolve
credibility choices in a manner contrary to recommendations of
magistrate who heard witnesses' testimony").

     [3]   See California v. Acevedo, 500 U.S. 565, 593 (1991); see
also United States v. Lopez, 380 U.S. 538, 543 (1st Cir. 2004),
cert. denied, 543 U.S. 1074 (2005), reh'g denied, 543 U.S. 1179
(2005).

circumstances.'" United States v. Nocella, 849 F.2d 33, 39 (1st Cir.1988) (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)). Specifically regarding the odor of marijuana, the Supreme Court has held the general principle that the requirement of probable cause is satisfied by a qualified individual's perception of a distinctive odor associated with a forbidden substance. See Johnson v. United States, 333 U.S. 10, 13 (1948).  In this case, the odor of marijuana sensed by officers with experience in the matter during the initial intervention with defendant afforded the agents probable cause to conduct a search of the vehicle without obtaining a warrant first.

Moreover, the search of defendant's vehicle did not have to be conducted at the place of the original intervention.  "[T]he relocation of a vehicle prior to the search does not affect the probable cause analysis." United States v. Le, 377 F.Supp. 2d 245, 253 (D. Me. 2005), aff'd by United States v. Cao, 471 F.3d 1 (1st Cir. 2006) (citing California v. Acevedo, 500 U.S. at [569-70] (citing Chambers v. Maroney, 399 U.S. at 51-52).  Based on the probable cause at the time of the initial traffic stop, Officer Berrios and the other police officers were justified in taking defendant's vehicle to the police station and conducting the search there.  See Chambers v. Maroney, 399 U.S. 42, 47-52 (1970) (warrantless seizure and subsequent search of a vehicle at a police station upheld because there was probable cause at the time of the stop to justify an immediate search) and California v. Acevedo, 500

U.S. at 570 ("the police could search later whenever they could have searched earlier [based on probable cause], had they so chosen") (citing Chambers v. Maroney, 399 U.S. at 51-52); see also Michigan v. Thomas, 458 U.S. 259, 261 (1982).

Officer Berrios testified that once at the police station, she initiated an inventory search of the vehicle because that was the standard procedure when a car is suspected to have been stolen and the personnel that usually conducts the inventory was not available. Upon opening the trunk, from where the odor emanated more strongly, the officers found ten (10) pounds of marijuana and proceeded to arrest the defendant.  The defendant does not contest the validity of the specific search of the trunk.  In any case, said search was not only justified as part of the inventory search but also under the automobile exception, since the odor of marijuana was stronger from that specific area of the car, giving the officers probable cause to search that compartment.  "The case law is consentient that when a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area." U.S. v. Staula, 80 F.3d 596, 602 (1st Cir. 1996).  What defendant does object to is the search that led to the discovery of a weapon inside the gauge cluster in the dashboard.

Criminal No.  07-41 (JAG)                                        15

     Defendant  argues  that  even  if  there  was  a  strong  odor  of
marijuana emanating from the trunk of his car, this was not probable
cause  to  search  the  dashboard  area  because  it  was  beyond  the  scope
of  any  search  based  on  the  smell  of  marijuana.  Accordingly,  the
defendant  argues  that  the  search  was  not  conducted  pursuant  to  the
probable  cause  stated  and  that  for  it  to  be  valid,  the  government
needed  to  show  that  the  police  had  probable  cause  to  search  the
entire  vehicle,  including  the  dashboard  and  instrument  cluster.

     Moreover,  defendant  argues  that  the  search  of  his  vehicle  was
not  justified  as  a  search  incident  to  the  arrest.  His  basis  for
this  contention  is  that  the  search  of  the  dashboard  began
approximately  45  minutes  to  one  hour  after  the  arrest,  at  a  time
when  the  defendant  was  not  physically  near  the  vehicle  and  could  not
be  an  occupant  of  the  vehicle.  According  to  defendant,  the  risks
that  the  search  incident  to  an  arrest  seeks  to  ameliorate  -  protect
police  officers  from  a  recently  arrested  individual  reaching  for  his
weapon  or  looking  to  destruct  evidence  -  were  not  present  during  the
search  of  his  vehicle.  In  addition,  defendant  states  that  the
search  inside  the  dashboard,  through  the  air  conditioning  vents  and
the  gauge  was  beyond  the  scope  of  an  inventory  search  and  was  based
on  uncorroborated  confidential  information  that  a  hidden  compartment
existed.  Defendant  argues  that  the  Court  cannot  uphold  the  search
of  a  hidden  compartment  under  the  exception  of  search  incident  to  an
arrest,  specially  in  view  of  the  fact  that  the  area  was  not  part  of

the passenger compartment, was not within the immediate control of defendant and could only be reached by dismantling of the vehicle.

The defendant is mistaken; the search that led to the seizure of the weapon was lawful because it fits within the automobile exception to the warrantless search.  As stated above, officers may search an automobile without a warrant based on the probable cause established at the time of the initial traffic stop.  During the traffic stop in this case, as Officer Berrios testified, an odor of marijuana emanated from the vehicle when the defendant rolled down his window.  The fact that the aroma of marijuana wafted from the passenger area of the vehicle makes that area "fair game" for a drug search under the automobile exception. Staula, 80 F.3d at 603 n. 4. The officers did not need to have probable cause to search the entire vehicle in order to search that specific area; they only needed probable cause to believe that there was contraband in the passenger area, which includes the dashboard. Acevedo, 500 U.S. at 573.

Officer Berrios' testimony also shows that after arresting the defendant, she looked into the air conditioning vent as part of the inventory search and because the information received by the informant pointed to that area of the car as housing contraband. The inventory search was conducted according to standardized objective procedures when a car is impounded because it is suspected to have been stolen.  However, looking into the air conditioning

Criminal No.  07-41 (JAG)                                    17

vents and the gauge cluster in the dashboard area is not exactly within the scope of the inventory search, which is meant to ascertain articles of value "both to protect the owner's property while in police custody, and to protect the police against future claims of misappropriation." U.S. v. Trullo, 790 F.2d 205 (1st Cir. 1986).  Although an inventory search encompasses the examination of closed containers in a vehicle to determine their contents, in this case, the weapon was in an inaccessible place which was not subject to inventorying.[4] See Id.

However, Officer Berrios' additional reason for looking into the air conditioning vent, that a confidential informant had stated that there was a compartment in the dashboard which contained contraband, combined with her own knowledge and under the totality of the circumstances, also supplied probable cause for the search. The confidential informant described the vehicle in make and color, gave its licence plate number and location, and specified that there was marijuana in the trunk and contraband in the dashboard area. Having stopped the car described by the informant after spotting it at the identified location, verified that the licence plate matched the one given by the informant and discovered marijuana in the

---

[4] Officer Berrios testified that she looked into the air conditioning vents in the dashboard area because the Inventory Search paperwork required her to check whether the air conditioning vents were present in the vehicle. (Docket No. 35, Transcript of Suppression Hearing, page 65).  However, the Court does not believe this to be an invitation to use a flashlight to inspect the air conditioning ducts.

trunk, just as the informant had asserted, those portions of the information were corroborated as accurate.  "In testing the sufficiency of probable cause for an officer's action even without a warrant, we have held that he may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." Jones v. U.S., 362 U.S. 257, 269 (1960) (overruled on other grounds by U.S. v. Salvucci, 448 U.S. 83 (1980)).  Even if the officers did not know the identity of the informant, under the totality of the circumstances, including the corroboration of virtually every aspect of the tip, it was reasonable for them to believe that contraband was being housed within the air conditioning vents and gauge cluster in the passenger area of the vehicle.  See U.S. v. Sandoval-Espana, 459 F.Supp.2d 121 (D.R.I. 2006).  In sum, the totality of the circumstances of this case establish the probable cause necessary sustain the warrantless search of both the trunk and the gauge cluster of defendant's car under the automobile exception.

Lastly, the fact that the weapon was within a compartment does not invalidate the search.  It has been clearly established by the Supreme Court that the privacy interest in closed containers within a car yields to the broad scope of an automobile search.  California v. Acevedo, 500 U.S. 565, 574 (1991).  "[T]he law recognizes that a vehicle search under this exception may encompass all areas of the

Criminal No.  07-41 (JAG)                                    19

vehicle in which the suspected contraband is likely to be found."
U.S. v. Staula, 80 F.3d 596, 602 (1ˢᵗ Cir. 1996) (*citing* United
States v. Maguire, 918 F.2d 254, 260 (1st Cir.1990), cert. denied,
499 U.S. 950(1991)). "The police may search an automobile and the
containers within it where they have probable cause to believe
contraband or evidence is contained." California v. Acevedo, 500
U.S. 565, 580 (1991).  Accordingly, the agents were justified in
searching the vehicle, without a "heightened scrutiny to contraband
discovered 'in a container in a locked hidden compartment' of the
automobile." Le, 377 F.Supp.2d at 252 (*citing and quoting* U.S. v.
Lopez, 380 F.3d 538, 544 (1ˢᵗ Cir. 2004)).

Having determined that the search that led to the seizure of
the illegal items was valid under the automobile exception, the
Court need not discuss defendant's other bases for exclusion.[5]  For
the reasons set forth herein, the Court finds that the traffic stop
and the subsequent search were legal.  The evidence seized as a
result of said actions is admissible under the findings of the
Report and Recommendation and applicable law.

---

[5] The Court notes that the search incident to arrest exception
might not apply in this case if the search was not contemporaneous
to the arrest and the area searched was not within the defendant's
immediate control.

Criminal No.  07-41 (JAG)                                    20

## CONCLUSION

For the reasons discussed above, the Court **ADOPTS** the conclusions contained in the Magistrate Judge's Report and Recommendation and **DENIES** defendant's motion to suppress.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 27th day of November, 2007.

S/Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge